# J. R. WILKINS, Respondent, *v.* IRON COUNTY, Appellant.

1. Fees of United States Commissioner.—A county is not liable for services performed by an United States Commissioner in Utah, as Committing Magistrate, although the offense was committed within the county sought to be charged.

2. Jurisdiction of Such Commissioner.—Persons appointed Commissioners under the act of Congress, approved June 23, 1874, in relation to courts in Utah Territory, have a Territorial jurisdiction, co-extensive with the power which appointed them, to-wit: that of the whole Territory.

Appeal from the Second Judicial District Court.

The facts appear in the opinion of the court.

*Snow & Snow*, for appellant.

There is no law authorizing or permitting the county courts of this Territory to pay the fees of commissioners when sitting as committing magistrates.

The commissioners hold their office by virtue of a law of the United States, and not by virtue of any law enacted by the Governor and Legislative Assembly of the Territory of Utah. See Poland Bill, C. L. p. 56, § 6.

And, so holding their authority, they must look to the government of the United States for a compensation for the services rendered by them.

Section 7 of the act extends over the Territory the Fee Bill of the United States, passed February 26, 1873. This Fee Bill gives the commissioner's fee, (see C. L. p. 694, § 847,) and provides for his payment in cases where the United States are liable to pay them on settling their accounts at the Treasury of the United States. C. L. p. 695, § 656; see, also, Stats. at Large, 168, 169.

*Denny & Dilly*, for respondent.

The only question to be determined or raised on this appeal is, is the county liable for the fees of the commissioner?

The Poland Bill, section 6, providing for the appointment of commissioners of the Supreme Courts, defines their duties: "And, in addition, they shall have the same authority as examining and committing magistrates in all cases arising under the laws of such Territory, as is now possessed by justices of the peace in said Territory."

It was not the purpose of Congress in passing this law to relieve the counties or the Territory from the costs and expenses of prosecution of offenses against any law of the Territory, or that Congress intended to assume any such burden in those cases. The law simply gives commissioners the same jurisdiction that justices of the peace exercise as examining and committing magistrates. See, also, U. S. Fee Bill, § 867, C. L. Utah, p. 69.

EMERSON, J., delivered the opinion of the court:

The respondent is a commissioner of the Supreme Court of this Territory, appointed under the provisions of section 6 of an act of Congress, approved June 23, 1874, in relation to Courts and Judicial Officers in the Territory of Utah. As such commissioner he performed services as a committing magistrate, in the examination of a person accused of a violation of some law of the Territory, the offense having been alleged to have been committed in Iron County. For these services he brought suit against the county, and recovered a judgment for the amount thereof, with costs.

The only question raised by the appeal is, is the county liable for the fees of the commissioner in such cases?

Section 6, of the act of Congress above referred to, provides "That the Supreme Court of said Territory is hereby authorized to appoint commissioners of said court, who shall have and exercise all the duties of commissioners of the Circuit Courts of the United States, and to take acknowledgments of bail; and, in addition, they shall have the same authority as examining and committing magistrates, in all cases arising

under the laws of said Territory, as is now performed by justices of the peace in said Territory."

The persons appointed under the above provision are commissioners of the Supreme Court of the Territory, and there can be no doubt but that this Territorial jurisdiction is co-extensive with that of the power which appoints them—that of the whole Territory.

The Territorial Legislature has made no provision for the payment of these fees.

The last clause of section 2, of the act of Congress above referred to, provides: "And the costs and expenses of all prosecutions for offenses against any law of the Territorial Legislature shall be paid out of the treasury of the Territory." Congress evidently anticipated that the Territorial Legislature would provide for these expenses. In fact, by the terms above quoted, it imposed this duty upon the legislature, by providing that these "costs and expenses" should be paid out of the Territorial treasury.

These officers were created by the act of Congress, with a Territorial jurisdiction, co-extensive with the limits of this Territory, and as to the subject matter of that jurisdiction, they have the same authority as examining and committing magistrates as justices of the peace throughout their Territorial jurisdiction.

With this extended Territorial jurisdiction it was wise and proper that the expense attendant thereon should be paid out of the Territorial treasury.

The language of the act of Congress in relation to these costs and expenses does not require any construction. It is plain and unequivocal.

There is, in our opinion, no legal obligation resting upon Iron County to pay this bill, and judgment should have been rendered for the defendant.

The judgment of the court below is reversed, with costs, and the cause remanded.

HUNTER, C. J., and BOREMAN, J., concur.